UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATRINA CHRISTOPHER,<br><br>            Plaintiff,<br><br>        v.<br><br>ANDREW SAUL,[1] Commissioner<br>of Social Security Administration,<br><br>            Defendant. | Case No. EDCV 18-2478 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I.    SUMMARY

On November 26, 2018, plaintiff Katrina Christopher filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions").  The Court has taken the Motions under submission

---

[1]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is hereby substituted in as the defendant in this action.

1

without oral argument.  <u>See</u> Fed. R. Civ. P. 78; L.R. 7-15; November 28, 2018
Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the
Commissioner is REVERSED AND REMANDED for further proceedings
consistent with this Memorandum Opinion and Order of Remand.

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 1, 2013, a prior Administrative Law Judge ("Prior ALJ")
determined that plaintiff was not disabled through the date of that decision ("Prior
Decision") based on plaintiff's prior applications for benefits filed on March 5,
2012.  (AR 90-98).

On November 10, 2014, plaintiff filed new applications for Supplemental
Security Income and Disability Insurance Benefits alleging disability beginning on
August 2, 2013, due to carpal tunnel syndrome, chronic pain, and high blood
pressure.  (Administrative Record ("AR") 15, 268, 275, 343).  The Administrative
Law Judge ("ALJ") examined the medical record and heard testimony from
plaintiff (who was represented by counsel) and a vocational expert.  (AR 66-86).

On February 28, 2018, the ALJ determined that plaintiff was not disabled
through the date of the decision.  (AR 15-26).  Specifically, the ALJ found:
(1) plaintiff suffered from the following severe impairments:  lumbar degenerative
disc disease, status-post laminectomy, stenosis, right shoulder impingement,
bilateral carpal tunnel syndrome, and obesity (AR 15); (2) plaintiff's impairments,
considered individually or in combination, did not meet or medically equal a listed
impairment (AR 18); (3) plaintiff retained the residual functional capacity to
perform less than a full range of light work (20 C.F.R. §§ 404.1567(b),

///
///
///

416.967(b))[2] (AR 19); (4) plaintiff could not perform any past relevant work (AR 24); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically parking lot signaler, Cashier II, and office helper (AR 24-25); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 20). The ALJ expressly declined to "adopt the specific findings" of the Prior ALJ, finding that "the presumption of continuing nondisability" had been "rebutted" by "new and material evidence [in the current record] showing changed circumstances," including plaintiff's hearing testimony "as well as the documentary medical evidence submitted subsequent to the date of the Prior ALJ Decision. . . ." (AR 15-16).

On September 26, 2018, the Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted); 20 C.F.R.

---

[2]Specifically, the ALJ determined that plaintiff (i) could lift, carry, push, and/or pull twenty pounds occasionally and ten pounds frequently; (ii) could stand and/or walk for six hours in an eight-hour workday; (iii) could sit for six hours in an eight-hour workday; (iv) could occasionally climb ramps and stairs; (v) could never climb ladders, ropes, or scaffolds; (vi) could occasionally balance, stoop, kneel, crouch, and crawl; (vii) could not perform work above shoulder level with the dominant right upper extremity; and (viii) could frequently use the bilateral upper extremities for gripping, grasping, and fine manipulation, but could not perform forceful gripping, grasping, or torqueing. (AR 19).

§§ 404.1505(a), 416.905.  To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy."  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

      To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations.  See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920).  The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4).  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy.  Id.

**B.     Federal Court Review of Social Security Disability Decisions**

      A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard of review in disability cases is "highly deferential."  Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's

decision contains error, it must be affirmed if the error was harmless. See Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## C. Medical Opinion Evidence

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the

opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians." 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); 20 C.F.R. §§ 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ may reject the uncontroverted opinion of an examining physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where an examining physician's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted). An ALJ must provide more than mere "conclusions" or "broad and vague" reasons for rejecting an examining physician's opinion. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted). "[The ALJ] must set forth his own interpretations and ///

explain why they, rather than the [physician's], are correct." <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988).

An ALJ is required to evaluate "every medical opinion"[3] in a claimant's case record. 20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c). While not bound by statements about a claimant's condition provided by nonexamining physicians, ALJs must consider such findings as "opinion evidence," and determine the weight to be given such opinions using essentially the same factors for weighing opinion evidence generally, including "supportability of the opinion in the evidence," "the consistency of the opinion with the record as a whole," "any explanation for the opinion provided by the [nonexamining physician]," as well as "all other factors that could have a bearing on the weight to which an opinion is entitled, [such as] any specialization of the [nonexamining physician]." 20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c). Since nonexamining physicians, by definition, have no examining or treating relationship with a claimant, the weight given to their opinions will primarily depend on the degree to which the opinions provided are supported by evidence in the case record and the extent to which the physicians explained their opinions. 20 C.F.R. §§ 404.1527(c)(2)(ii), (3), 416.927(c)(2)(ii), (3).

**IV.  DISCUSSION**

Plaintiff essentially contends that the ALJ improperly "relied on a consultative examiner [and] state agency opinion that did not review any records or very few records[]" and assessed plaintiff's residual functional capacity based solely on the ALJ's own, lay interpretation of the raw medical data from individual treatment records. (Plaintiff's Motion at 7-10). The Court agrees that a remand is

---

[3]"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

warranted since the ALJ's residual functional capacity assessment is not supported by substantial evidence, and the Court cannot find that the ALJ's error was harmless.

Here, the ALJ effectively rejected the only medical opinion provided by a physician who had actually examined plaintiff.[4] (AR 23) (ALJ giving "little weight to the opinion of the consultative examiner, Dr. Barnabe") (citing Exhibit B2F [AR 426-30]). The ALJ gave "significant weight" to the opinions provided by the nonexamining state agency medical consultants ("state agency consultants") – the only other medical opinions in the record which address plaintiff's functional abilities. (AR 23; see AR 106-08, 115-17 [June 2, 2015 opinion of Dr. Jacobs, state agency medical consultant at the initial level, that plaintiff would "be limited to a full range of light work" ("Dr. Jacobs' Opinion")]; AR 126-28, 136-38 [August 20, 2015, opinion summarily affirming Dr. Jacobs' Opinion on reconsideration with addition of postural limitations]). In general, the opinion of a non-examining medical consultant may provide substantial evidence for an ALJ's decision if the medical opinion relies on and is consistent with the medical record as a whole. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record") (citation omitted); see, e.g., Sportsman v. Colvin, 637 Fed. Appx. 992, 995 (9th Cir. 2016) ("ALJ did not err in assigning substantial weight to the state agency medical consultant whose opinion relied on and was consistent with the medical evidence of record.") (citing id.). The opinions of the state agency consultants in plaintiff's

///

_____

[4] In the May 20, 2015 report of a complete orthopedic evaluation of plaintiff by Dr. Vincente Bernabe, a consultative examining orthopedic surgeon, essentially opined that plaintiff had the residual functional capacity to perform medium work ("Dr. Bernabe's Opinions") (AR 104, 113, 426-30).

case, however, appear to have little, if any, probative value beyond the date they were written.

First, the state agency consultants' opinions themselves rest on a flimsy foundation. For example, Dr. Jacobs' Opinion appears to rely on the "Light RFC" from the Prior ALJ Decision, implicitly rejecting Dr. Bernabe's Opinions. (AR 106, 115). As noted above, however, the ALJ here expressly declined to adopt the findings in the Prior ALJ Decision. (AR 15-16). The only other pertinent medical evidence in the record available at the initial level was treatment notes from two medical visits almost a year apart – *i.e.*, March 6, 2014 and January 9, 2015 – which documents that plaintiff had simply been advised to apply ice and heat and to continue taking unspecified pain medication to treat her low back pain, and that plaintiff was also referred to an orthopedic specialist. (AR 104, 113, 414-15, 424-25). On reconsideration, a state agency consultant found "no new [medical evidence of record] for review that would change the original decision." (AR 126, 136).

Second, the opinions of the state agency consultants appear to be inconsistent with the medical evidence in the record as a whole. Cf., e.g., Serna v. Berryhill, 2017 WL 8181144, at *5 (C.D. Cal. July 31, 2017) ("[T]he fact that a state agency medical consultant did not review the entire medical record is not error when it is evident that the ALJ reviewed the entire record and concluded that the later records are consistent with the medical evidence as a whole.") (citation omitted). In short, the new medical evidence submitted after the state agency consultants' opinions documents repeated complaints from plaintiff of severe pain, medical findings that surgical intervention was indicated for plaintiff's back condition given the results of objective medical testing and that conservative treatment methods (*i.e.*, epidural injection and medication) had not worked, and that plaintiff continued to experience severe back pain even after the surgery. (See, e.g., AR 612-15, 635-49, 658-59, 662, 666-76, 690). The foregoing stands

in stark contrast to the opinions of the state agency consultants which, as discussed above, appear primarily predicated on treatment notes from two occasions when plaintiff's back condition was simply treated with ice and heat and unspecified pain medication, the consultative examining physician's opinions which were rejected by both the ALJ and Dr. Jacobs, as well as the Prior ALJ's residual functional capacity assessment which the ALJ expressly declined to adopt.

Third, the ALJ's summary of the new medical evidence is not entirely complete or accurate. See generally Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ may not selectively rely on only the portions of record which support non-disability) (citations omitted); Reddick, 157 F.3d at 722-23 (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record"); cf., e.g., Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support ALJ's decision); Lesko v. Shalala, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error). For example, the ALJ determined generally that "treatment records reveal the [plaintiff] received routine, conservative and non-emergency treatment since the alleged onset date." (AR 20). Specifically, the ALJ wrote that on January 6, 2016, plaintiff "reported the steroid injections did help her pain[.]" (AR 21) (citing Exhibit B6F at 9 [AR 620]). In the same progress note, however, the treating physician wrote that plaintiff had actually "failed" treatment with epidural injection and medication. (AR 620). In addition, as the ALJ noted, medical records from March 16, 2016, April 25, 2016, and June 9, 2016, reflect objective findings on examination of plaintiff such as muscle spasm and limited range of motion of the lumbar spine. (Exhibit B6F at 6-8 [AR 617-19]). The ALJ's decision, however, did not mention the additional objective findings that had been identified in the same treatment note (i.e.,

radiculopathy, positive straight leg raising test, and reduced sensation), nor that surgery had been considered as a treatment option at that time.  (AR 617-19).

The ALJ also wrote that while "[e]xaminations revealed some symptoms consistent with the [plaintiff's] allegations, [] the objective findings failed to support the severity of her allegations."  (AR 21).  As an example, the ALJ wrote that on July 11, 2017, plaintiff complained of ongoing low back pain and "[a]n examination showed she had mild difficulty transferring from a chair to standing to the examination table, she had tenderness to palpation in the back at midline paraspinal, limited range of motion secondary to pain, and decreased sensation to light touch in the bilateral lower extremities[,]" but it was noted that plaintiff was still able "to ambulate with a normal heel and toe gait, independently, without any assistive device, [and plaintiff] had no use of spinal orthosis, [] had no tenderness in the extremities, and [] had negative straight leg raising."  (AR 21-22) (citing Exhibit B7F at 4-6 [AR 635-37]).  Contrary to the ALJ's apparent suggestion that such objective findings were inconsistent with the alleged extent of plaintiff's functional limitations, the same records indicate that plaintiff's treating physician had specifically addressed "the possibility of [] surgical intervention" since plaintiff had "attempted and failed multiple modalities of conservative care, including epidural injections."  (AR 637).  Likewise, the ALJ noted that on August 8, 2017, plaintiff "reported ongoing symptoms" but "had similar findings as noted from her July 11, 2017 visit."  (AR 22) (citing Exhibit B7F at 9-12 [AR 640-43]).  That progress note, however, reflects that plaintiff's treating orthopedic surgeon had again recommended "surgical intervention" due to the "continued failure of non operative and conservative treatments[,]" and that plaintiff had agreed "to proceed" with the surgery even though, as the ALJ specifically pointed out, plaintiff had reportedly "refuse[d] any surgery" on January 10, 2017.  (AR 21, 564, 642).  Moreover, on October 24, 2017, plaintiff did, in fact, undergo the ///

surgery recommended (*i.e.*, "L4 bilateral laminectomy with medial facetectomies and foraminotomies"). (AR 658-59).

Similarly, while acknowledging that plaintiff had "a brief period with increased symptoms and limitations following her surgical intervention[,]" the ALJ still concluded that "the limited evidence thereafter" showed only "some improvement" which "[did] not support greater limitations" than those noted in the ALJ's decision. (AR 22). Nonetheless, such medical records document "improvement" only in postoperative complications at incision site and plaintiff's leg symptoms (AR 667, 671, 673, 690) and, more significantly, reflect that plaintiff had continued to report experiencing very severe low back pain despite the surgery (AR 666 [November 9, 2017 progress note that 16 days after surgery plaintiff rated her pain as "10/10"]; AR 668 [November 16, 2017 progress note that plaintiff had "continued low back pain" with "pain [at] 10/10"]; AR 670 [November 22, 2017 progress note that plaintiff had "continued low back pain" with "pain [at] 6/10"]; AR 672 [December 1, 2017 progress note "[p]revious symptoms have stayed the same"]; AR 676, 690 [December 8, 2017 progress note that plaintiff "still has present pain in her back . . . [of] 6/10"]).

Considering, at least, the foregoing, the Court cannot conclude that the opinions of the state agency consultants constituted substantial evidence supporting the ALJ's non-disability determination. See, e.g., Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (noting "nonexamining physician's opinion 'with nothing more' [does] not constitute substantial evidence") (citation omitted); cf., e.g., Sportsman, 2016 WL 146030, at *2 (finding that the ALJ did not err in according "substantial weight" to state agency physician's assessment that predated a year's worth of medical evidence since ALJ had "reviewed the entire medical history" and "came to a rational conclusion" regarding the plaintiff's limitations).

///

12

Consequently, it appears that the ALJ's residual functional capacity assessment for at least the period after August 20, 2015 (when Dr. Jacobs' Opinion was affirmed on reconsideration) through the date of the decision was based solely on the ALJ's own lay interpretation of the medical records as a whole.  (AR 23) ("In sum, the residual functional capacity assessed by this decision is supported by the evidence as a whole.").  As a lay person, however, "an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam), and citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)); see also Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 17 (1st Cir. 1996) ("With a few exceptions . . . an ALJ, as a layperson, is not qualified to interpret raw data in a medical record."); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[ALJ] must not succumb to the temptation to play doctor and make . . . independent medical findings.") (citations and quotation marks omitted).  Hence, the ALJ's residual functional capacity assessment is not supported by substantial evidence.  See Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."); Tagger v. Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.") (citations and internal quotation marks omitted); Winters v. Barnhart, 2003 WL 22384784, *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.") (citations omitted); Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician") (citation omitted).

///

1    The Court cannot confidently conclude that the ALJ's errors were harmless.
2    For example, at the hearing, the vocational expert testified that there would be no
3    jobs available if plaintiff (or a hypothetical individual with the same
4    characteristics as plaintiff) had greater limitations than the ALJ assessed in the
5    decision.  (AR 85).  Thus, it is unclear if the failure to rely on a physician's
6    medical assessment of plaintiff's functional abilities was inconsequential to the
7    ALJ's ultimate nondisability determination.

8         Accordingly, a remand is warranted to permit the ALJ to reevaluate the
9    medical opinion evidence, and – to the extent the ALJ deems it appropriate in light
10   of the foregoing and the record – to have a more current consultative evaluation
11   conducted to assess plaintiff's functional abilities/limitations.  See generally
12   Brawders v. Astrue, 793 F. Supp. 2d 485, 493 (D. Mass. 2011) (citing Perez v.
13   Secretary of Health and Human Services, 958 F.2d 445, 446 (1st Cir. 1991) (per
14   curiam) ("[W]here an ALJ reaches conclusions about [a] claimant's physical
15   exertional capacity without any assessment of residual functional capacity by a
16   physician, the ALJ's conclusions are not supported by substantial evidence and it
17   is necessary to remand for the taking of further functional evidence.")).

18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

14

## V. CONCLUSION[5]

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED in part, and this matter is REMANDED for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 30, 2019.

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[5]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in Social Security cases) (citations omitted).